# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAYTON LEE SMITHLINE, | No. 2:16-cv-1104-CMK |
| Plaintiff, | |
| vs. | <u>MEMORANDUM OPINION AND ORDER</u> |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pending before the court are plaintiff's motion for summary judgment (Doc. 13) and defendant's cross-motion for summary judgment (Doc. 14).

## I. PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits on February 14, 2013, alleging an amended onset of disability on July 9, 2012, due to sprain or strain, hamstring tear, sciatic nerve

---

[1] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

1

pain (Certified administrative record ("CAR") 54, 55-56, 74, 125-28, 160). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested an administrative hearing, which was held on October 6, 2014, before Administrative Law Judge ("ALJ") David G. Buell. In an October 21, 2014, decision, the ALJ concluded that plaintiff is not disabled[2] based on the following findings:

>   1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
>
>   2.   The claimant has not engaged in substantial gainful activity since March 1, 2013, the amended alleged onset date (20 CFR 404.1571 *et seq*).

/ / /

---

[2]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

>   Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>   Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>   Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>   Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>   Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

| | | |
|---|---|---|
| 1 | 3. | The claimant has the following severe impairments: residual of hamstring tear, lumbar degenerative disc disease with radiculopathy, and obesity (20 CFR 404.1520(c)). |
| 2 | | |
| 3 | 4. | The claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). |
| 4 | | |
| 5 | | |
| 6 | 5. | After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except with occasional climbing of ramps or stairs; never climb ladders, ropes or scaffolds; occasionally balance, stoop kneel, crouch or crawl; no work at heights or any activities that could lead to injury, so no exposure to workplace hazards; no exposure to extreme heat, wetness or humidity; and is able to do simple, routine, that he can only occasionally stoop, crouch, kneel, and crawl. He cannot operate foot controls. |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | 6. | The claimant is unable to perform any past relevant work (20 CFR 404.1565). |
| 12 | | |
| 13 | 7. | The claimant was born on March 1, 1963 and was 49 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563). |
| 14 | | |
| 15 | 8. | The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564). |
| 16 | 9. | Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). |
| 17 | | |
| 18 | | |
| 19 | 10. | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a). |
| 20 | | |
| 21 | | |
| 22 | 11. | The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2013, through the date of this decision (20 CFR 404.1520(g)). |
| 23 | | |

(CAR 10-19). After the Appeals Council declined review on March 22, 2016, this appeal followed.

/ / /

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III. DISCUSSION

Plaintiff argues the ALJ erred in three ways. First, plaintiff contends the ALJ erred in not including all of his impairments at Step Two of the analysis. Second, plaintiff contends the ALJ erred rejecting his treating physician's opinion. Finally, plaintiff contends the ALJ failed to take into consideration the side effects of his medications.

/ / /

/ / /

**A.     Step Two**

Plaintiff alleges the ALJ failed to properly evaluate and include all of his impairments at Step Two of the analysis. Specifically, he contends the ALJ failed to include his migraine headaches and the neuropathy which affects his hands and upper extremities. Defendant counters that the ALJ property evaluated plaintiff's impairments at Step Two, that the ALJ included of his supported impairments in his evaluation, and that plaintiff fails to identify any specific limitations related to his headaches.

In order to be entitled to benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c).[3] In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe. See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923. An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. See Social Security Ruling ("SSR") 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28). The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient. See id.

/ / /

---

[3] Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521, 416.921.

5

Here, plaintiff offers no evidence of any limitations he has related to either his neuropathy or his headaches. He cites to a few medical visits wherein these conditions were addressed, but there is notably very few. In fact, plaintiff only points to one visit where his headaches were addressed. At that visit, in March 2012, plaintiff was provided medication (CAR 243). However, this condition was not addressed again until May 2014, wherein plaintiff reported he had not had any headaches recently (CAR 380). Similarly, plaintiff was evaluated for neuropathy a few times, but none of the visits resulted in any notable limitations. In fact, in Dr. Fujioka's evaluation, there were no limitations as to plaintiff's abilities in reaching, handling or fingering (CAR 400). While plaintiff is correct that there he had electro diagnostic tests which were borderline abnormal, the doctor noted that the "clinical significant [was] uncertain as his sensory ax's fall outside of the distribution of the ulnar nerve." (CAR 266). It is only error if the ALJ finds a condition not serious if the condition limits plaintiff's abilities. Plaintiff argues the ALJ failed to take into account the limitations posed by these conditions, but even he does not identify what those limitations are. Given that plaintiff was only seen one time during the relevant time frame here for headaches, and only four times for neuropathy, without significant treatment for either condition, the undersigned cannot find that either condition constitutes a serious condition the ALJ should have taken into account.

### B. Medical Opinions

Next, plaintiff contends the ALJ erred in rejecting his treating physician's opinion without proper reasoning. Plaintiff argues the ALJ's rejection of Dr. Fujioka's opinion, which was not contradicted by any other treating or examining source, was not supported by the record. Defendant argues the opinion was properly rejected and the rejection is supported by the record.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual,

than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

Dr. Fujioka completed two assessments of plaintiff's limitations, one on July 24, 2013, the other on September 20, 2014. In the July 24, 2013 assessment, Dr. Fujioka opined

plaintiff to be limited to 10-20 minutes of walking, 20 minutes of standing at one time, for about 2 hours a day; more than two hours of sitting at one time, at least 6 hours in a day; he would need to walk every 90 minutes for 5 minutes; needs the ability to shift position at will; would need 3 to 4 breaks for 5-20 minutes; rarely lift up to 10 pounds, never more; could occasionally twist, rarely stoop or squat, never climb; no limitations with reaching, handling or fingering; and would estimate plaintiff being absent from work more than four days per month. (CAR 321-24).

In September 2014, Dr. Fujioka completed the second assessment, finding plaintiff more limited to the extent that he could only walk a half a block; could sit for up to 10 minutes at a time, for a total of less than two hours per day; could stand for up to 10 minutes at a time, for a total of less than two hours per day; he would need to walk around every 15 minutes for 10 minutes; would need to shift positions at will; would need a break every 10-15 minutes for 10-15 minutes each time and would need to lie down or sit quietly during each break; would be able to lift up to 20 pounds rarely, never more; could occasionally twist, but rarely stoop, squat or climb; and would estimate plaintiff being absent from work more than four days per month.

The ALJ gave Dr. Fujioka's opinion:

> little weight – for a number of reasons. A close reading of them reveals that they are quite inconsistent with one another on several points. They were prepared more than a year apart but the record does not reveal any intervening change in the claimant's condition to account for the disparity. This casts some doubt on their accuracy.
>
> More importantly, the doctor does not provide any factual rationale for his extreme limits. His clinical notes do not provide any observations or objective testing or even reports from the claimant that would tend to show that, for example, he can sit for only 10 minutes at a time. (The claimant sat for longer than that at the hearing.)
>
> The opinions are not consistent with other substantial evidence in the record. The most recent treatment notes from Dr. Fujioka are dated September of 2013. On that date, he treated the claimant for pain in his left foot and sent him to physical therapy for that. It is unlikely the claimant had the extraordinary functional limit the doctor described then if that was the only treatment he provided to the claimant.

| | The claimant testified that he sees that doctor about six times a year. That estimate is not supported by the evidence. |
|---|---|
| 1 | |
| 2 | (CAR 17). |

3    Plaintiff does not argue the reasons given were insufficient, but rather contends
4 the reasons are not supported by the evidence, and are false statements. Specifically, he argues
5 the ALJ's determination that Dr. Fujioka's assessments are inconsistent without any intervening
6 change is inaccurate. Plaintiff points to a February 11, 2014 visit wherein plaintiff had fallen and
7 re-injured his hamstring, and a May 23, 2014 assessment wherein the doctor found plaintiff had
8 failed physical therapy and continued painful condition. Second, plaintiff argues Dr. Fujioka's
9 opinions are supported by a treatment relationship spanning two and a half years, wherein Dr.
10 Fujioka coordinated plaintiff's treatment among specialists. Finally, plaintiff contends that Dr.
11 Fujioka's opinions are supported by subsequent visits in that Dr. Fujioka examined plaintiff in
12 February and May of 2014, despite the ALJ's statement that he was not examined after
13 September 2013.

14    Defendant counters that the reasons given for discounting Dr. Fujioka's opinions
15 are sufficient and supported by substantial evidence. Specifically, defendant argues that the
16 ALJ's personal observations of the plaintiff, which directly contradicted Dr. Fujioka's opinion
17 was a valid reason. In addition, there was substantial evidence in the record contradicting Dr.
18 Fujioka's opinion, such as plaintiff's reports of his activities. Further, defendant contends that
19 plaintiff's conservative treatment and clinical findings weigh against Dr. Fujioka's opinion, and
20 that the State agency reviewing physicians support the ALJ's decision. Finally, defendant argues
21 that plaitniff does not demonstrate error in the ALJ's findings as the support for his position is
22 minimal.

23    The undersigned agrees with the defendant's argument that there is significant
24 support in the record for the ALJ's decision. As to the specific reasons given, not all of the
25 reasons are adequately supported by the record, but others are. The reasons the ALJ gave for
26 rejecting the doctor's opinion are inconsistency, lack of clinical support, and the ALJ's own

observations.  As to the inconsistency, the ALJ points out the inconsistency between the two assessments as well as an inconsistency with the treatment records.  There is support in the record for this reason.  While plaintiff is correct, that he did report an intervening injury in February 2014, he failed to explain the improvement that is noted with physical therapy and acupuncture.  In addition, while Dr. Fujioka noted plaintiff failed physical therapy, the records fail to support that assessment and in fact indicate that plaintiff chose to discontinue physical therapy and "to work on HEP independently." (CAR 363).  Every notation in the medical records shows physical therapy helped his condition; there is no rationale for the indication that he failed in physical therapy.  Therefore, while there was an intervening injury, with the physical therapy and acupuncture treatments which improved his condition, the significant increase in limitations opined by Dr. Fujioka is unexplained.  Thus, this reason appears to be supported by the evidence.

As to the lack of clinical support, defendant's arguments as to the conservative treatment and clinical findings are persuasive.  The ALJ found Dr. Fujioka's "clinical notes do not provide any observations or objective testing or even reports from the claimant that would tend to show" that plaintiff is as limited as set forth in his September 2014 assessment. Reviewing the medical records as a whole, the undersigned finds support for this assessment. While plaintiff is correct that he had an on-going treatment history with Dr. Fujioka, the records show the treatment was conservative consisting of some medication, physical therapy and acupuncture.  While surgery was not recommended, plaintiff declined participating in the chronic pain program (CAR 380) and his improvement is well documented, despite aggravating his condition by overdoing activities.  Thus, the ALJ's interpretation that the clinical notes do not provide support for Dr. Fujioka's severe limitaitons is supported by the record.  As set forth above, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed. See Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

To the extent the ALJ stated that plaintiff had not been seen by Dr. Fujioka since September 2013, plaintiff is correct that the record shows he was seen two other times, in February and May 2014. However, as the other reasons provided were sufficient, the undersigned finds any error in that reason to be harmless. Where, as here, the ALJ provides analysis but some part of that analysis is flawed (i.e., some but not all of the reasons given for rejecting a claimant's credibility are either legally insufficient or unsupported by the record), the <u>Batson</u> standard applies and any error is harmless if it is inconsequential to the ultimate decision because the ALJ's disability determination nonetheless remains valid. See <u>Batson v. Commissioner of Social Security</u>, 359 F.3d 1190 (9th Cir. 2004); see also <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1069 n.4 (9th Cir. 2006).

### C.    Medication

Finally, plaintiff contends the ALJ's erred in failing to take into consideration the side effects of his medication, which can make him drowsy.

It is unclear what medication plaintiff is on which causes drowsiness. In fact, the undersigned finds very limited history of medication prescribed at all. As of May 23, 2014, the only medication noted was meloxicam, a nonsteroidal anti-inflammatory, and baclofen, a muscle-relaxant. Prior to that, plaintiff was prescribed similar medication in July 2013. However, in February 2014, the only treatment plaintiff was prescribed was rest, ice and/or heat, "medications as directed," as well as exercises and stretching. It is not documented what medication plaintiff was taking at that time, with the exception of a general reference to muscle relaxers. At the time of his original injury, in July 2012, plaintiff was prescribed acetaminophen-codeine, but that appears to be a one time prescription despite plaintiff's argument to the contrary. Plaintiff fails to show any support in the record for his contention that the medications make him drowsy, and that the drowsiness is disabling. Nowhere in the undersigned's review of the medical records did plaintiff ever report any negative side effects of the medication he was prescribed, nor did he complain about drowsiness. Plaintiff did testify that the pain medication he is on makes him

drowsy to the point that he cannot drive.  However, the ALJ found plaintiff's testimony not entirely credible, a finding plaintiff does not challenge.  Plaintiff's contention in his motion that all of the medication he is on contributes to his drowsiness is not supported even by his own testimony.  The undersigned finds no reversible error.

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 13) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 14) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED:  September 25, 2017

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE